NOTICE
Decision filed 11/24/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250691-U

NO. 5-25-0691

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 25-CF-164 |
| | ) | |
| DEQUAN J. HOPKINS, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT delivered the judgment of the court.
Presiding Justice McHaney and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2    The defendant, Dequan J. Hopkins, appeals the August 14, 2025, order from the trial court of Jefferson County that granted the State's petition to deny pretrial release and the August 20, 2025, denial of his motion for relief and immediate release. The defendant argues the State did not meet the clear and convincing standard and, therefore, the trial court erred in making a finding that the proof was evident and the presumption great that the defendant committed the charged offenses of aggravated discharge of a firearm and unlawful possession of a weapon by a felon. For the reasons that follow, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4     On August 4, 2025, the defendant was charged by information with aggravated discharge of a firearm, a Class 1 felony. 720 ILCS 5/24-1.2(a) (West 2024). On August 7, 2025, the State filed a supplemental information, and the defendant was additionally charged with unlawful possession of a weapon by a felon, a Class 2 felony. *Id.* § 24-1.1(a). On August 7, 2025, the State filed a verified petition to deny the defendant pretrial release. The petition alleged that the defendant committed a forcible felony, and that he poses a real and present threat to the safety of any person or persons or the community. A hearing on the petition to deny pretrial release was scheduled for August 8, 2025, but was continued on the defendant's motion.

¶ 5     On August 14, 2025, the trial court conducted a hearing on the State's petition to deny pretrial release, held concurrently with the preliminary hearing. The State called Detective Brylan Morlan of the Mt. Vernon Police Department (MVPD) to testify. Detective Morlan testified that on July 27, 2025, MVPD responded to the area of South 15th Street and Lamar Avenue in response to a shooting. Upon arrival, officers observed several individuals at the scene, some of whom were running and others suffering from gunshot wounds. In total, seven individuals, including two deceased victims, had been shot, and several vehicles had also been struck by gunfire.

¶ 6     Several witnesses were interviewed during the investigation. Many reported hearing a few gunshots followed by a brief pause, then several more shots. At that point, the scene became chaotic, with people running in multiple directions, fleeing the area, and several individuals were observed holding firearms. Based on witness interviews and security footage, police identified three primary suspects: the defendant, Davonta Boyd, and Jamaro Kemmerling.

¶ 7     The State introduced into evidence four video clips recorded by city security cameras positioned at the intersection of South 15th Street and Lamar Avenue. Detective Morlan testified

that he had viewed the street camera footage and utilized it during the investigation. The footage was played for the trial court and paused to allow Detective Morlan to testify regarding the videos.

¶ 8    The first clip was shown in monochrome. Detective Morlan recognized two men on the first clip, the defendant and Jamaro Kemmerling. Detective Morlan identified the defendant noting he was wearing shorts, white shoes, a T-shirt, and a head wrap or hat. Detective Morlan testified that two individuals, Nevaeh Gladney and Isiah Jones, also identified the defendant after being shown still images from the clip.

¶ 9    The second clip was shown in color. Detective Morlan identified the same two individuals seen in the first clip, the defendant and Kemmerling. Kemmerling is wearing a white tank top, and the defendant is wearing a blue shirt, shorts, and white shoes. The defendant's long hair is visible down by his face.

¶ 10    The third clip was shown in color. Detective Morlan identified the defendant in the third clip as the individual in the blue shirt, shorts, and white shoes who was located between two vehicles. A few flowerpots or plant beds were located behind the defendant. Detective Morlan testified that the video shows the defendant stumbling in a yard near the flowerpots. Detective Morlan testified that the defendant then extends his arm behind him and runs in between the houses. As he is doing so, Detective Morlan described several muzzle flashes in the video. The video also depicts a large group of people behind the defendant, in the direction that the arm behind him is pointing and the gun was fired Detective Morland described what he observed as, "[the defendant] had just tripped over the flowerpot, turns his body, puts his arm behind him, and you see the muzzle flash several times as he runs with the firearm extended behind his body."

¶ 11    The fourth clip was shown in color. Detective Morlan testified that the fourth clip depicts a closer view of the defendant stumbling in the area of the flowerpots and extending his arm; a

flash from his hand can be seen. Detective Morlan testified that an iPhone belonging to Tonika Little, who was in a relationship with the defendant, was found in the area of the yard where the defendant stumbled.

¶ 12 The defendant also gave a statement to law enforcement that he was at the party and dropped Little's phone while he was running from the shooting. The defendant further admitted that Little's phone was the only phone he had in his possession that evening. Detective Morlan also testified that shell casings were found in the defendant's flight path by crime scene technicians from the Illinois State Police.

¶ 13 On cross-examination, Detective Morlan testified that he believed the defendant possessed and fired a gun that night based on evidence provided by the Illinois State Police Crime Scene Unit, witness statements, and the surveillance video. However, he further testified that police had not recovered any firearm believed to have been discharged at the scene. Additionally, no witnesses told police that they saw the defendant in possession of, or firing, a gun, nor did anyone report seeing the defendant running through the yard during the events depicted in the video footage.

¶ 14 The defense noted the presence of bullet holes in the back passenger window of a vehicle parked nearby the scene of the shooting and questioned Detective Morlan whether it would be physically impossible for bullets shot by the defendant to strike the parked vehicle in the location of the holes. Therefore, the conclusion by the defense was that there was more than one person in the area discharging a firearm. Further, three other potential shooters can be seen in the security footage.

¶ 15 Defense counsel argued that another potential shooter had been earlier detained and later released when a review of the security footage showed the observed flash more closely resembled

that of a flashlight or phone, rather than a muzzle flash. As to the defendant, while he did possess two phones, he had previously stated to the MVPD that on the night of the occurrence, he only had one phone with him, Little's. It is unknown whether he possessed a flashlight on the night of the occurrence.

¶ 16    At the conclusion of the preliminary hearing, the trial court stated it had considered the evidence presented, including security footage and Detective Morlan's testimony, and found that there was probable cause to support the charge of aggravated discharge of a firearm and possession of a weapon by a felon.

¶ 17    The court then proceeded directly into the detention hearing. The State relied on the previously offered evidence and asked that the court find that (1) a detainable offense had been committed, (2) defendant poses a real and present threat to the safety of the community, and (3) that no condition or combination of conditions can mitigate the real and present threat posed by the defendant.

¶ 18    The State argued it had satisfied all three statutory elements required to detain the defendant. Specifically, the State contended it had proven by clear and convincing evidence that the defendant had committed a qualifying offense. Witnesses identified the defendant in surveillance footage captured by the city's street camera system, and law enforcement tracked the defendant through a second camera view. Further, the State argued that the physical evidence and the defendant's own statement to police corroborated the video evidence. The defendant admitted being at the party, running once shots were fired, and dropping Little's phone while fleeing. The phone was recovered along the same flight path taken by the individual wearing clothing matching the defendant's, seen stumbling near the flowerpots in the footage.

5

¶ 19    The defendant proceeded by way of proffer regarding the defendant's family situation and criminal background, specifically that prior to his arrest, he was employed at two jobs, was engaged to Little, had raised two of her children, had a child due in September 2025, and had a nine-year-old daughter. Additionally, he was not currently on parole, probation, or pretrial release, and had zero failures to appear.

¶ 20    The defense argued that there were other males at the location of the incident that fit the physical description of the defendant, and there is no witness who has stated that they saw gunfire from the defendant. The defense concluded by stating that even if the court found that a detainable offense had been committed, and the defendant was a threat to the public and community, conditions could be put into place to ensure his appearance and the safety of the community.

¶ 21    The trial court found that the State had met its burden of proof under the clear and convincing standard. The trial court began by stating that the defendant only had a score of three on the Virginia Pretrial Risk Assessment Instrument, which is not considered a flight risk. The court indicated that the defendant's prior criminal history was a concern as he had been convicted of second degree murder, a street gang conviction, and unlawful possession of a handgun. In the previous year there was an order of protection and plenary order of protection entered against the defendant. The trial court proceeded to state that the security footage is not crystal clear. However, when viewed in combination with the testimony of Detective Morlan, the positive identification from witnesses when shown the images taken from the footage, the flash coming from the defendant as he ran, and the shell casings found in the flight path of the defendant, there was enough evidence to meet the State's burden. The trial court found this behavior indicates a wanton disregard for human life. The petition to deny pretrial release was granted.

¶ 22    On August 18, 2025, the defendant filed a motion for relief and immediate pretrial release under the pretrial fairness act. See Ill. S. Ct. R. Rule 604(h) (eff. Apr. 15, 2024). The defendant's motion for relief argued that the State failed to meet its burden of proof that he committed the offense, he posed a real and present threat to the safety of any person or the community, and that less restrictive conditions would not avoid the real and present threat to the safety of any person or the community.

¶ 23    On August 20, 2025, the trial court heard the defendant's motion. The State argued that the trial court properly found that the defendant displayed a wanton disregard for human life and the trial court properly found that no condition or combination of conditions would be sufficient to mitigate a present threat.

¶ 24    During the hearing on the motion for relief, the defendant argued that the trial court failed to consider the elements listed in the motion. Specifically, the defendant had significant family ties in the county, was expecting a child soon, was recently employed in the community, and did not have a record of failure to appear. Also, the defendant would be willing to submit to any conditions of release, including home confinement. The trial court denied the defendant's motion for relief, stating the same reasons cited at the pretrial release hearing. The defendant timely appealed.

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, the Office of the State Appellate Defender (OSAD) was appointed to represent the defendant. The defendant filed a memorandum in support of his appeal pursuant to Rule 604(h). The defendant's memorandum argues that the trial court erred in finding that the State established a detainable offense as required under section 110-6.1(e)(1) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(e)(1) (West 2024)), because the State's evidence did not clearly and convincingly show that it was "greatly presumed" the defendant was the person depicted in the

third and fourth video clips. The defendant's memorandum further contends that the State failed to prove by clear and convincing evidence it could be greatly presumed that he was the individual depicted in the third and fourth clips of the security footage and therefore committed the charged offense. *Id*. The defendant further argues that the State's likelihood of success at trial is a relevant consideration. *People v. Wells*, 279 Ill. App. 3d 564 (1996).

¶ 27 Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). Upon filing a timely, verified petition requesting denial of pretrial release, the State has the burden of proving by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community, and that less restrictive conditions would not mitigate a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* §§ 110-6.1(e), (f). The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. *Id.* § 110-6.1(f)(2). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the trial court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 28 Our standard of review of pretrial release determinations is twofold. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this

court stands in the same position as the trial court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. However, where the trial court is asked to consider the testimony of live witnesses, and make factual findings, such as the State's burden of presenting clear and convincing evidence that conditions of pretrial release would not protect any person or the community, the defendant has a high likelihood of willful flight to avoid prosecution, or the defendant failed to comply with previously ordered conditions of pretrial release, our standard of review is the manifest weight of the evidence. *Id.* "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 29    First, we note that the defendant has only advanced one argument from his motion for relief, being that the State failed to prove that the defendant committed a detainable offense. The remaining two issues in the motion for relief, being that the defendant posed a real and present threat, and that no condition or combination of conditions could mitigate that threat, are thus abandoned on appeal. See *People v. Drew*, 2024 IL App (5th) 240697, ¶ 21; Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) ("If a memorandum is filed, it must identify which issues from the motion for relief are *advanced* on appeal." (Emphasis added.)).

¶ 30    The defendant's memorandum contends that the State failed to prove by clear and convincing evidence that it could be greatly presumed that he was the individual depicted in the third and fourth clips of the security footage and therefore committed the charged offense, and that the State's likelihood of success at trial is a relevant consideration under *Wells*, 279 Ill. App. 3d 564 (1996). The Fourth District in *People v. Wright*, 2024 IL App (4th) 240187, ¶ 37, clarified that *Wells* applies only in the "rare exceptions" where a defendant is detained during the potentially

9

lengthy interlocutory appeals process. Although the defendant cites *Wright* and urges this court to reject its reasoning as unsound and inconsistent with section 110-6.1(e)(1) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(e)(1) (west 2024)), this court disagrees. The circumstances in *Wells* are markedly distinct from those presented here. *Wells*, 279 Ill. App. 3d 564 (1996). In *Wells*, the defendant had been in pretrial custody for four years while the State pursued multiple interlocutory appeals. *Id.* As the *Wright* court explained, *Wells* carved out a narrow exception that is not applicable to the present case. *Wright*, 2024 IL App (4th) 240187, ¶ 37. Here, the record reflects that the trial court properly considered the evidence presented and made findings consistent with the statutory requirements. 725 ILCS 5/110-6.1(e)(1) (West 2024). Accordingly, this court finds no error in the trial court's determination that the presumption is great that the defendant committed the charged offense and that the State met its burden under section 110-6.1(e)(1).

¶ 31 We have thoroughly reviewed the record on appeal in this matter, including the initial detention hearing and the hearing on the defendant's motion for relief. The trial court heard testimonial evidence from the State, including statements from Detective Morlan and viewed security footage depicting the defendant during the commission of the offense. Based on this evidence, the court expressly found that the defendant had been identified as one of the individuals shown discharging a weapon. The evidence, therefore, established that the presumption is great that the defendant committed aggravated discharge of a firearm and unlawful possession of a weapon, both qualifying detainable offenses under the statute. An opposite conclusion is not clearly evident, or the finding itself is not unreasonable, arbitrary, or not based on the evidence presented. Therefore, we find that the trial court's decision to detain the defendant was not against the manifest weight of the evidence. *Morgan*, 2025 IL 130626, ¶¶ 38, 43.

10

¶ 32                                III. CONCLUSION

¶ 33    Based on the foregoing reasons, we affirm the trial court's orders granting the State's

verified petition to deny pretrial release and denying the defendant's motion for relief.


¶ 34    Affirmed.